Earl, J.
On the 6th day of December, 1890, between the hours of four and five o’clock p. m., the plaintiff, desiring to return to her home in New York from Brooklyn, went to the Fulton ferry, and in passing from the ferry bridge on to the ferryboat she fell down and was injured, and she brought this action to recover damages for her injuries. Her claim of negligence against the defendant is that the boat was eighteen or twenty inches lower than the bridge, and that that was the occasion of her fall. She was the sole witness upon the trial to the accident. She produced no other witness who saw the accident, or heard of it at the time. She did not at the time make any complaint to anyone connected with the ferry, and she produced no evidence but her own to show that the boat was lower than the bridge. The substance of her evidence to show that the boat was lower is as follows: “ I fell on the boat from off the bridge. I fell on the boat because the boat was so much lower than the bridge; that is a fact. I didn’t discover that this boat was below the bridge at all until after I had fallen. I should judge from the fall that the deck of the boat must have been eighteen or twenty inches below the "bridge, for the fall was a terrible fall I can tell you. I know what you mean by the bridge descending to the ferryboat. Whether that bridge was on a level, or was inclined downwards at that time; I couldn’t see. I couldn’t tell whether it was inclined down. I couldn’t see whether it was; if I could, why, I wouldn’t have fell.
“ Q. I am asking you about the bridge, not about the boat at all. You got up on top of the bridge, and when you did you were some distance from the boat. Before you commenced to go to the boat at all, after you got on the bridge, was the bridge level, or was there a decline ?
“ The Court: Did you walk down when you went on the boat, or did you walk up ?
“ The Witness: I can’t tell whether it was up or down; I •can’t tell, because I don’t remember whether it was up or down; I walked along about my business and didn’t take any notice of the bridge; * * * I passed down the bridge, and I stepped from the bridge to the boat and fell, because the boat was below the bridge, and then it was that I got the fall that injured me; I •didn’t know anything about the boat being below the bridge until X fell, because I couldn’t see ; I didn’t think to look; I walked *11 right along as usual; I didn’t look; I went about my business; walked right along.
“ Q. Please answer my question. You didn’t look, you say, but if you had looked, it was sufficiently near to you to see? A. Sufficiently what?
“ Q. The boat was sufficiently near to you, if you had looked, to see whether it was below the bridge, wasn’t it ? A. I didn’t look to see.
“ Q. I know; but if you had looked, you could have seen, ■couldn’t you ? A. Why, I suppose I might have if the light had been sufficient, but it was very dim.
“ Q. But you didn’t look, anyhow ? A. Ho, I didn’t look, .anyhow.
11 Q. How, do you know whether the light was so dim or not that you couldn’t see ? A. I don’t know. * * *
“ Q. I think you said to Judge Daily, Mrs. Eace, that it must have been eighteen or twenty inches, the boat, below the bridge ? A. I should judge from the fall that I received, knocking the breath out of my body, that the boat must have been eighteen or "twenty inches below the bridge; I have no other means of judging only, from the steep fall and the jar and injuries received internally ; I have no other means of forming the opinion; I don’t know how far it was below the bridge; I can’t say positively; I did not see how far it was below the bridge.
“ Q. And the whole thing is simply that from the fall you had you have formed a conclusion that it must have been eighteen or twenty inches below the bridge ? A. From the force of the fall and the injuries I received internally, it must have been ; I can’t judge from anything else, because I was jarred internally; I •didn’t see it; I couldn’t see.”
“On re-direct examination:
“After I fell I did not turn and look at the bridge.”
It is clear from this evidence that she could not tell how much lower the boat was than the bridge. She did not look, and she did not see the discrepancy in the height, and when she says it was eighteen or twenty inches, she merely gives her judgment based upon the severity of her fall, and her judgment under the circumstances does not rise to the dignity of evidence upon which a jury could base a verdict. Her fall was unexpected and instantaneous, and she was so severely injured, according to her evidence, that she could not then have formed any accurate or reliable judgment as to the distance she fell. We know from observation and experience that she might have fallen if the discrepancy had been but six inches, or even less, and have been just as badly injured.
The bridge rests upon the water, so that it can rise and fall with the tides, and thus it and the boat when brought to it will usually be substantially at the same level. According to all the evidence on both sides some discrepancy between the height of the bridge and the boat is inevitable, sometimes the bridge being higher than the boat, and vice versa, the discrepancy varying from one to eight inches. The ferry company, in the management of its business, has the right to assume that passengers will take some care of them *12 selves, and if it conducts its business with such care and skill as will make the entrance upon its boats safe for persons of ordinary prudence, it meets the requirements of the law. The proof on the part of the defendant showed that all its ferries were managed-in substantially the same way, and that while they carried many millions of passengers yearly, no accident of this kind was ever-reported or known.
The plaintiff had the burden to show that the defendant was-guilty of culpable negligence in permitting the boat on the occasion of this accident to be lower than the bridge, and we thinkr after a careful scrutiny of all the evidence, that she failed fairly to sustain that burden.
The judgment should, therefore, be reversed, and a new trial granted, costs to abide the event.
All concur.