JAMES RIDDLE, as Administrator of the Estate of DAVID B. ALEXANDER, Deceased, Respondent, v. FORTY-SECOND STREET, MANHATTANVILLE AND ST. NICHOLAS AVENUE RAILWAY COMPANY, Appellant.

CONTRIBUTORY NEGLIGENCE. Where, upon the trial of an action for negligence, it appears that the plaintiff's intestate, who was an employee of contractors excavating under defendant's street railway, over which cars were continually passing, was working in a trench, that he was struck by a car, which he saw as it approached, that he leaned back so as to be out of its way, that there was plenty of room in the trench for him to remain at a safe distance from the car as it passed, and had he done so no

injury would have resulted, but he raised up, and bringing his face nearer to the car, came in collision with the step, he must be deemed guilty of such contributory negligence as will prevent a recovery in the action.

*Riddle* v. *Forty-second St., M. & St. N. A. Ry. Co ,* 72 App. Div. 619, reversed.

(Submitted January 15, 1903; decided January 27, 1903.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered May 22, 1902, affirming a judgment in favor of plaintiff entered upon a verdict and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Charles F. Brown, Addison C. Ormsbee* and *Henry A. Robinson* for appellant. The complaint should have been dismissed on the ground that the plaintiff failed to show absence of contributory negligence on the part of deceased. (*Knisley* v. *Pratt,* 148 N. Y. 372 ; *Gibson* v. *E. R. R. Co.,* 63 N. Y. 449 ; *Buckley* v. *G. P. & R. M. Co.,* 113 N. Y. 540 ; *Marsh* v. *Chickering,* 101 N. Y. 396 ; *Nolan* v. *M. S. Ry. Co.,* 65 App. Div. 184 ; *Neumeister* v. *Eggers,* 29 App. Div. 385 ; *Ward* v. *Mayor, etc.,* 19 App. Div. 48 ; *Wiwirowski* v. *L. S. & M. S. R. Co.,* 124 N. Y. 420 ; *Bond* v. *Smith,* 113 N. Y. 378 ; *Cordell* v. *N. Y. C. & H. R. R. R. Co.,* 75 N. Y. 330 ; *Reynolds* v. *N. Y. C. & H. R. R. R. Co.,* 58 N. Y. 248.) The complaint should have been dismissed because the plaintiff failed to show any negligence on the part of defendant. (*Pakalinsky* v. *N. Y. C. & H. R. R. R. Co.,* 82 N. Y. 424 ; *Daniels* v. *S. I. R. T. Co.,* 125 N. Y. 407 ; *Huber* v. *N. E. R. R. Co.,* 22 App. Div. 426.)

*Thomas Darlington* for respondent. The various exceptions were not well taken. (*Moody* v. *Rowell,* 17 Pick. 498 ; *Worrall* v. *Parmelee,* 1 N. Y. 519 ; *Shorter* v. *People,* 2 N. Y. 193 ; *Harnett* v. *Garvey,* 66 N. Y. 641 ; *Cowley* v. *People,* 83 N. Y. 464 ; 24 How. Pr. 172 ; *Masten* v. *Deyo,* 2

Wend. 424; *Bengivenga* v. *B. H. R. Co.*, 48 App. Div. 515; *McDonald* v. *M. S. R. R. Co.*, 167 N. Y. 66; *Lewis* v. *B. R. R. Co.*, 35 App. Div. 12.)

Haight, J. This action was brought to recover damages for the alleged negligent killing of David Brown Alexander, commonly known as David Brown. The plaintiff was his maternal aunt, with whom he lived and supported. It does not appear that he left other relatives.

The decedent was a carpenter in the employ of Naughton & Co., contractors, who were engaged in altering switches for the defendant company. At the time of the accident they were engaged in changing a switch on the Boulevard near Seventy-first street in the city of New York, at which point the tracks curve around and run down Tenth avenue. An excavation had been made under the tracks twelve or fifteen feet square, with a trench on the outer side of the curve several feet in length and between three and four feet in depth, so as to make a change of the gas pipes underneath the tracks. The decedent and one Lloyd were engaged in bracing up the tracks of the railway company and in watching the bracings as the cars passed over the tracks, the decedent acting as foreman and Lloyd as his helper. The cars upon the defendant's road were operated by electricity taken from a power rail which had been removed for the space of about twenty-five feet on either side of the excavation, and the defendant's cars ran over the tracks at that point by means of the momentum obtained before reaching the point where the power rail had been removed. The cars passed about a minute and a half apart. At the time of the accident the decedent and Lloyd were in the trench stooping down when one of the defendant's cars approached from the north, passing over the excavation. As it approached the decedent leaned back in the trench so as to be out of the way of the car, and it appears to have partially passed, at which time he straightened up, bringing his face nearer to the car. In rounding the curve the rear step of the car extended farther from the

track by some eight or ten inches than when running on a straight track, and in passing it struck the decedent upon the bridge of the nose, knocking him backwards on to the side of the trench. After the accident the decedent arose. There was a mark upon his nose where a small piece of the skin was torn off. Some one of the men present supplied him with a piece of court plaster which he pasted over the place of the injury and then he returned to his work in the trench where he remained, according to the testimony of Lloyd, the plaintiff's witness, for the space of about twenty minutes, and by other witnesses from an hour to an hour and a half, and then he left, going to the tool house a short distance away, complaining of a pain in his head. This was about eleven o'clock in the forenoon. He remained at the tool house the rest of the day. When the rest of his fellow-workmen quit work in the evening he went to a saloon near by, where he remained until about nine o'clock in the evening. During the day he appears to have been in a partial stupor, sleeping some of the time. At other times he was troubled with nausea and vomited, and was unable to walk without assistance, and in attempting to do so on two or three occasions fell down. He was taken home from the saloon in a cab, assisted into his house and to bed, and appears to have gone to sleep. The next morning he was found unconscious by his aunt, and subsequently he was removed to the J. Hood Wright Hospital, where he died during the day. Upon the post mortem examination a slight abrasion was found upon the back of the head and a clot of blood of the size of a small hen's egg in the temporal lobe of the brain on the right side. The cause of his death was cerebral hemorrhage causing apoplexy. The walls of the blood vessels had the appearance of being degenerated and in an unhealthy condition.

The contention of the plaintiff was to the effect that he was a strong, healthy, temperate man ; and on the part of the defendant that he was very intemperate ; had drank liquor several times that morning before the accident and that he had complained of pain in his head for a number of days ;

that he was drunk during the day and evening, and vomited several times. At the conclusion of the plaintiff's evidence the defendant moved for a nonsuit upon the ground that no negligence had been shown on the part of the defendant and that it affirmatively appeared that the decedent was guilty of contributory negligence, and this motion was renewed upon the close of the evidence. It was denied on each occasion and an exception taken. The verdict was in favor of the plaintiff and the judgment entered thereon has been affirmed by the Appellate Division, but the affirmance does not appear to have been unanimous.

We think that the motion for a nonsuit or for the direction of a verdict should have been granted. The only negligence charged against the defendant was in not warning the decedent of the approach of its car. Upon this question the evidence may be conflicting; some of the persons present testified that the gong was sounded, but Lloyd, who was in the trench with the decedent, did not hear it. It, however, is undisputed that the contractors employed a man to stand by the trench and give warning to the men in the trench of the approach of a car and that this was done on this occasion. But, assuming that no warning was given, the fact remains that the decedent saw the car as it approached; that he leaned back in the trench so as to be out of its way; that there was plenty of room in the trench for him to remain at a safe distance from the car while it passed, and had he done so no injury would have resulted; but by raising up and bringing his face nearer to the car while it was passing he came in collision with the step. This was his own act, and we think it was contributory negligence on his part. He appears to have been an intelligent man, and, as we have seen, was the foreman in charge of the work. He knew that the trench was at the point where there was a curve in the tracks around which the cars ran into Tenth avenue, and that in rounding the curve the rear of a car would be thrown a greater distance from the track than the side of the car when running upon a straight line. He was familiar with the situation; he under-

stood the dangers, and in engaging to do the work undertook the risks.

The judgment should be reversed, and a new trial ordered, with costs to abide the event.

PARKER, Ch. J., GRAY, BARTLETT, MARTIN, VANN and WERNER, JJ., concur.

Judgment reversed, etc.